UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
ST. LOUIS DIVISION

| | |
|---|---|
| THE STATE OF ARKANSAS; THE STATE OF MISSOURI; THE STATE OF IOWA; THE STATE OF NEBRASKA; THE STATE OF NORTH DAKOTA; THE STATE OF SOUTH DAKOTA; A.F., a minor, by Sara Ford, her mother,<br><br>                    *Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION; MIGUEL CARDONA, in his official capacity as Secretary of the United States Department of Education; CATHERINE E. LHAMON, in her official capacity as Assistant Secretary for Civil Rights at the United States Department of Education; RANDOLPH WILLS, in his official capacity as Deputy Assistant Secretary for Enforcement at the United States Department of Education,<br><br>                    *Defendants*. | Case No.: 4:24-cv-636 |

**SUPPLEMENTAL BRIEF ON SUBSEQUENT DECISIONS**

*Loper Bright*

The Court ordered the parties to brief the impact of the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, --- S. Ct. ---, 2024 WL 3208360 (U.S. June 28, 2024), on Plaintiffs' preliminary-injunction motion and the underlying case. *See* ECF No. 36.

The core holding of *Loper Bright* is that agencies are no longer entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Defendants have not invoked *Chevron* or otherwise claimed that the Final Rule's interpretations of Title IX are owed deference. *See, e.g.*, Defs.' PI Br., ECF No. 18, at 17 ("[T]he Department does

1

not contend that Congress gave it the authority to decide as a matter of policy whether Title IX prohibits discrimination based on gender identity. Instead, . . . the Department in this provision merely interpreted the unambiguous text of the statute."). And where the agency has not "invoke[ed] *Chevron*," courts have "decline[d] to consider whether any deference might be due." *HollyFrontier Cheyenne Ref., LLC v. Renewable Fuels Ass'n*, 594 U.S. 382, 394 (2021). Hence, the posture of the case, on the deference issue, hasn't changed.

That said, *Loper Bright* does, critically, further underscore the impropriety of the Final Rule's rewrite of Title IX. The Court explained that one of *Chevron*'s major failings is that it "allow[ed] agencies to change course even when Congress [had] given them no authority to do so." *Loper Bright Enters.*, 2024 WL 3208360, at *21. This "foster[ed] unwarranted instability in the law, leaving those attempting to plan around agency action in an eternal fog of uncertainty." *Id.* (internal citations and quotation marks omitted). Under *Loper Bright*, "courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Id.* at 22. The Court explained that "statutes, no matter how impenetrable, do—in fact, must—have a single, best meaning. That is the whole point of having written statutes; 'every statute's meaning is fixed at the time of enactment.'" *Id.* at *16 (quoting *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018)). Courts must therefore interpret a statute's words "consistent with their ordinary meaning . . . at the time Congress enacted the statute." *Wis. Cent. Ltd.*, 585 U.S. at 284. Where an agency's interpretation of its statutory authority "is not the one the court, after applying all relevant interpretive tools, concludes is best . . . it is not permissible." *Loper Bright Enters.*, 2024 WL 3208360, at *16.

As Plaintiffs have explained, the Department's rewrite of Title IX jettisons decades of settled understanding of that 1972 statute's meaning. *See* Pls.' PI Br., ECF No. 12, at 19-26;

2

Pls.' Reply, ECF No. 21, at 2-7.  While the Department may have declined to rely on *Chevron* to defend the Final Rule, it nevertheless committed the sin of "chang[ing] course even when Congress has given [it] no power to do so."  *Loper Bright Enters.*, 2024 WL 3208360, at *21.  In fact, the Department's rewrite reverses regulations "issued roughly contemporaneously with the enactment" of Title IX, which merely underscores the impropriety of the new rule.  *Id.* at *9.  Title IX 's mandate of providing equal educational opportunities for women and girls was crystal clear in 1972.  Far from enforcing that statutory mandate, the Final Rule turns it on its head.

Moreover, the Court's observation that agencies' abruptly changing their interpretations of longstanding statutes leaves regulated parties in a "fog of uncertainty" is thoroughly illustrated here.  *Id.*  There's no dispute that the Department's rejection of Title IX's plain meaning and fifty years of practice has left Plaintiff States, thousands of schools, and countless universities uncertain about whether they are legally required to allow biological men who identify as female into girls' restrooms, locker rooms, and showers, or whether they must police students'—like A.F.'s—speech in violation of the First Amendment.  Indeed, that's why Defendants now face lawsuits by 26 states and have been preliminarily enjoined from enforcing the Final Rule in fourteen states thus far.

*Loper Bright thus* highlights the Final Rule's incompatibility with Title IX's text, structure, and history.  Plaintiffs are likely to succeed in their APA challenge.

*Kansas v. United States Department of Education*

The Court ordered the parties to brief "the impact, if any, of the preliminary injunction issued by the District of Kansas in *State of Kansas, et al., v. United States Dep't of Educ., et al*, 2024 WL 3273285 (D. Kan. July 2, 2024), upon the motion and underlying case pending in this

Court."  ECF No. 38 at 1.  For the reasons explained below, the *Kansas* decision does not diminish Plaintiffs' need for injunctive relief against the Final Rule.

The *Kansas* court, like the district courts in *Tennessee v. Cardona*, No. 2:24-cv-00072-DCR-CJS, 2024 WL 3019146 (E.D. Ky. June 17, 2024), and *Louisiana v. U.S. Dep't of Educ.*, No. 3:24-CV-00563, 2024 WL 2978786 (W.D. La. June 13, 2024), concluded that the plaintiffs "are likely to prevail on their claims that the Final Rule is contrary to law and exceeds statutory authority, the Final Rule is an unconstitutional exercise of legislative power under the Spending Clause, the Final Rule violates the First Amendment, and the Final Rule is arbitrary and capricious."  2024 WL 3273285, at *17.  It issued a preliminary injunction barring Defendants from enforcing the Final Rule against the plaintiffs in that case.  *Id.* at *22.

Three of the *Kansas* plaintiffs are organizations with national membership: Young America's Foundation, Female Athletes United, and Moms for Liberty.  The *Kansas* court's preliminary injunction covers "schools attended by the members" of the former two organizations, in addition to "schools attended by the children of the members of Moms for Liberty."  *Id.* at *22.  The organizational plaintiffs were ordered to "file a notice in the record identifying the schools which their members or their members' children, as applicable, attend on or before July 15, 2024."  *Id.*  The court fashioned this relief to give complete relief to the plaintiffs in that case "without resort[ing] to [a] universal injunction[]."  *Id.* at *20.  The court recognized that "[u]nder the APA, courts are ultimately authorized to set aside unlawful agency action, a remedy referred to as vacatur," on a universal basis.  *Id.*  But it viewed Tenth Circuit precedent as disfavoring "preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits."  *Id.* (quoting *Fish v. Kobach*, 840 F.3d 710, 723-24 (10th Cir. 2016)).  The court concluded that "[g]ranting a nationwide [preliminary] injunction . . .would

4

effectively give Plaintiffs all the relief they might ultimately hope to obtain at the completion of this litigation." *Kansas*, 2024 WL 3273285 at *20.  The court thus left "it to Defendants, in the first instance, to determine whether patchwork enforcement of the Final Rule is feasible and worth the risk of running afoul of the court's injunction, thereby exposing Defendants and their representatives to sanctions for contempt." *Id.*  It recognized that under 5 U.S.C. 705, Defendants may "evaluate the cumulative effect of relief provided by th[at] court, along with relief provided in other courts, both prior to and after this order is entered," and decide "to stay the effective date of the Final Rule pending completion of judicial review." *Id.*  To date, the Defendants have not indicated they will voluntarily stay the Final Rule pending resolution of Plaintiffs' APA challenge.

Plaintiffs wish to offer three observations related to the *Kansas* decision.  *First*, that decision further underscores Plaintiffs' likelihood of success in challenging the Final Rule.  The *Kansas* court reached the same conclusion that the *Tennessee* and *Louisiana* courts have: the Final Rule is unlikely to withstand judicial scrutiny because it exceeds the Department's authority under Title IX, is unconstitutional, and is arbitrary and capricious. *See id.* at *17.  And both States and students, like A.F., will suffer irreparable harm unless the Final Rule is enjoined. *Id.*  The weight of authority against the Final Rule thus continues to grow.

*Second*, this Court need not follow the *Kansas* court's decision as to the scope of relief.  While that court noted that Tenth Circuit precedent disfavors universal injunctive relief at the preliminary-injunction stage, Eighth Circuit precedent does not.  Instead, "'the scope of injunctive relief is dictated by the extent of the violation established, not by the geographical extent of the plaintiff class.'" *Nebraska v. Biden*, 52 F.4th 1044, 1048 (8th Cir. 2022) (quoting *Rodgers v. Bryant*, 942 F.3d 451, 458 (8th Cir. 2019)).  Narrow relief is improper where complexities would "make any limits uncertain in their application and effectiveness." *Id.*  The *Kansas* court recognized that its narrow

5

relief leaving open "patchwork enforcement of the Final Rule" may prove not to be "feasible," but determined that circuit precedent nevertheless bound it to leave to the Department the task of determining whether to enforce its unlawful rule against non-covered funding recipients. *Kansas*, 2024 WL 3273285, at *20. This Court is not similarly bound and should instead follow Eighth Circuit precedent in issuing injunctive relief to remedy the nationwide "violation established" by the Final Rule. *Nebraska*, 52 F.4th at 1048 (quotation omitted).

*Third*, the *Kansas* injunction does not diminish the Plaintiffs' need for injunctive relief. That injunction only covers the schools and universities attended by the membership of the three organizational plaintiffs in that case. The *Kansas* plaintiffs are required to file a notice of those schools and universities by July 15. It is highly unlikely that those organizations' memberships will cover every one of the thousands of funding recipients subject to Title IX among the six Plaintiff States in this case. Anything less than complete relief to Plaintiffs in this case will fail to ameliorate the irreparable harm the Final Rule is poised to cause should it become effective. *See* Pls.' PI Br., ECF No. 12, at 38-46. Indeed, absent injunctive relief from this Court, Plaintiff States would be in the unworkable position of having their state laws unable to be enforced in some schools and universities, but not others. And the *Kansas* injunction's coverage will depend on the organizational membership of the *Kansas* plaintiffs. In short, Plaintiffs cannot rely on the *Kansas* injunction to secure the necessary relief against the Final Rule. Only an injunction from this Court prohibiting, at a minimum, enforcement of the Final Rule against Plaintiffs will provide complete relief.

Moreover, even assuming that the *Kansas* injunction could indirectly provide relief to the Plaintiffs here (and, as explained above, it cannot suffice to provide complete relief), Plaintiffs cannot be assured that injunction will remain in place during this litigation. Indeed, Defendants have already begun seeking to reinstate parts of the Final Rule in the *Tennessee* and *Louisiana* litigation. *See Tennessee v. Cardona*, No. 24-5588, ECF No. 19 (Sixth Cir. July 1, 2024) (seeking partial stay

6

of preliminary injunction pending appeal); *Tennessee v. Cardona*, No. CV 2: 24-072-DCR, ECF No. 104 (E.D. Ky. June 24, 2024) same); *State of Louisiana v. EDUC*, No. 24-30399, ECF No. 28 (5th Cir. July 1, 2024) (same); *State of Louisiana, et al. v. U.S. Dep't of Educ.*, et al., 3: 24-CV-00563, ECF No. 59 (W.D. La. June 24, 2024) (same).  They will no doubt pursue a stay of the *Kansas* injunction as well, and that injunction could be stayed or narrowed during subsequent proceedings.

This Court should therefore continue to proceed and, as every court to consider this matter has done thus far, issue preliminary relief barring enforcement of the Final Rule.

## CONCLUSION

For the reasons explained here and in Plaintiffs' preliminary-injunction briefing, the Court should postpone the effective date of the Final Rule and grant a preliminary injunction against its enforcement.

Dated: July 8, 2024                                          Respectfully submitted,

| | |
|---|---|
| TIM GRIFFIN<br>Arkansas Attorney General | ANDREW BAILEY<br>Missouri Attorney General |
| */s/ Dylan L. Jacobs*<br>Nicholas J. Bronni<br>  Solicitor General<br>Dylan L. Jacobs<br>  Deputy Solicitor General<br>Office of the Arkansas Attorney General<br>323 Center Street, Suite 200<br>Little Rock, AR  72201<br>Telephone: (501) 682-2007<br>Fax: (501) 683-2520<br>nicholas.bronni@arkansasag.gov<br>dylan.jacobs@arkansasag.gov<br><br>*Counsel for Plaintiff State of Arkansas* | */s/ Joshua M. Divine*<br>Joshua M. Divine<br>  Solicitor General<br>Missouri Attorney General's Office<br>Post Office Box 899<br>Jefferson City, MO 65102<br>Tel. (573) 751-1800<br>Fax. (573) 751-0774<br>josh.divine@ago.mo.gov<br><br>*Counsel for Plaintiff State of Missouri* |

| | |
|---|---|
| BRENNA BIRD<br>Iowa Attorney General<br><br>/s/ *Eric H. Wessan*<br>Eric H. Wessan<br>Solicitor General<br>Office of the Iowa Attorney General<br>1305 E. Walnut Street<br>Des Moines, Iowa 50319<br>(515) 281-5164<br>eric.wessan@ag.iowa.gov<br><br>*Counsel for Plaintiff State of Iowa* | MICHAEL T. HILGERS<br>Nebraska Attorney General<br><br>/s/ *Lincoln J. Korell*<br>Lincoln J. Korell<br>Assistant Solicitor General<br>Office of the Nebraska<br>Attorney General<br>2115 State Capitol<br>Lincoln, NE 68509<br>(402) 471-2682<br>lincoln.korell@nebraska.gov<br><br>*Counsel for Plaintiff State of Nebraska* |
| DREW H. WRIGLEY<br>North Dakota Attorney General<br><br>/s/ *Katie L. Carpenter*<br>Katie L. Carpenter<br>*Deputy Solicitor General*<br>North Dakota Office of the Attorney General<br>600 E. Boulevard Ave., Dept. 125<br>Bismarck, ND 58505<br>Telephone: (701) 328-2210<br>Email: katcarpenter@nd.gov<br><br>*Counsel for Plaintiff State of North Dakota* | MARTY J. JACKLEY<br>South Dakota Attorney General<br><br>/s/ *Charles D. McGuigan*<br>Charles D. McGuigan<br>Deputy Attorney General<br>Office of the Attorney General<br>1302 E. Hwy. 14, Suite 1<br>Pierre, SD 57501-8501<br>Telephone: (605) 773-3215<br>Facsimile: (605) 773-4106<br>charles.mcguigan@state.sd.us<br><br>*Counsel for Plaintiff State of South Dakota* |

Jonathan A. Scruggs\*
Arizona Bar No. 030505
Henry W. Frampton, IV\*
South Carolina Bar No. 75314
**Alliance Defending Freedom**
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020
(480) 444-0028 Fax
jscruggs@ADFlegal.org
hframpton@ADFlegal.org

Rachel A. Rouleau\*
Virginia Bar No. 97783
**Alliance Defending Freedom**
44180 Riverside Parkway
Lansdowne, Virginia 20176
(571) 707-2119
(571) 707-4790 Fax
rrouleau@ADFlegal.org

Natalie D. Thompson\*\*
TX Bar No. 24088529
**Alliance Defending Freedom**
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
(202) 347-3622 Fax
nthompson@ADFlegal.org

*s/ Brad L. Blake*
Brad L. Blake
Missouri Bar No. 38340
Fellows & Blake, L.C.
13421 Manchester Road, Suite 105
St. Louis, MO 63131
(314) 725-1600
(314) 725-1609 Fax
bblake@fellowsblakelaw.com

*Counsel for Plaintiff A.F.*

\**Admitted pro hac vice*

\*\**Admitted pro hac vice, practice supervised by one or more D.C. Bar members while D.C. Bar application is pending.*