IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| STATE OF ARKANSAS, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>MIGUEL CARDONA, *in his official capacity as Secretary of Education*, et al.,<br><br>*Defendants*. | No. 4:24-cv-636-RWS |

**DEFENDANTS' SUPPLEMENTAL BRIEF ADDRESSING**
***LOPER BRIGHT V. RAIMONDO* AND *KANSAS V. DEPARTMENT OF EDUCATION***

Defendants submit this supplemental brief to address two topics: first, pursuant to the Court's Memorandum and Order dated July 1, 2024, ECF No. 36, Defendants address *Loper Bright Enterprises v. Raimondo*, --- S. Ct. ----, 2024 WL 3208360 (June 28, 2024), and its impact, if any, upon the pending motion and underlying case; second, pursuant to the Court's order dated July 3, 2024, ECF No. 38, Defendants address the impact, if any, of the preliminary injunction issued by the District of Kansas in *Kansas v. Department of Education*, No. 24-4041-JWB, 2024 WL 3273285 (D. Kan. July 2, 2024).

### I. *Loper Bright Enterprises v. Raimondo*

The Supreme Court's decision in *Loper Bright* does not have any impact on the outcome of this case. In *Loper Bright*, the Supreme Court overruled *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-843 (1984) which established a two-step framework for court review of an agency's interpretations of a statute it administers. *Loper Bright*, 2024 WL 3208360, at *6. Under the *Chevron* framework, the court first would consider "whether Congress had directly spoken to the precise question at issue." *Id.* (quoting *Chevron*, 467 U.S. ak

842). If the court determined that "'the statute [wa]s silent or ambiguous with respect to the specific issue,'" then the court would "defer to the agency's interpretation if it '[wa]s based on a permissible construction of the statute.'" *Id.* (quoting *Chevron*, 467 U.S. at 843).

In *Loper Bright*, the Supreme Court held that courts should no longer apply *Chevron* deference and should instead "exercise their independent judgment in deciding whether an agency has acted within its statutory authority." 2024 WL 3208360, at *22. In part, the Court relied on the instruction in 5 U.S.C. § 706 that the court shall decide "*all* relevant questions of law" when reviewing agency action. *Id.* at *12 (quoting 5 U.S.C. § 706). The Supreme Court made clear, however, that courts may still "seek aid from the interpretations" of agencies, which "'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance' consistent with the APA." *Id.* at *13 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). And, where a statute delegates discretion to an agency, which the Supreme Court noted happened "often," then the court should recognize the delegation and "ensur[e] the agency has engaged in 'reasoned decisionmaking' within those boundaries." *Id.* at *13-14 (quoting *Michigan v. EPA*, 576 U.S. 743, 750 (2015)). Here, Congress stated that the Department "is authorized and directed to effectuate the provisions of [20 U.S.C. § 1681]" by "issuing rules, regulations, or orders of general applicability which shall be consistent with achievement of the objectives of the statute authorizing the financial assistance in connection with which the action is taken." 20 U.S.C. § 1682.

The Court's decision in *Loper Bright* does not affect the outcome of this case (or the validity of the Rule) because neither the Rule nor Defendants' arguments in defense of the Rule rely on *Chevron* deference. The Rule mentions *Chevron* exactly once—in a footnote listing cases cited by a commenter. Nondiscrimination on the Basis of Sex in Education Programs or Activities

Receiving Federal Financial Assistance, 89 Fed. Reg. 33,474, 33,543 n.25 (Apr. 29, 2024). And Defendants' opposition to Plaintiffs' motion for a preliminary injunction does not cite *Chevron* at all. *See generally* Defs.' PI Opp'n, ECF No. 18. Accordingly, all of Defendants' prior arguments as to the propriety of each of the challenged provisions in the Rule remain fully applicable.

    A.    **Section 106.10**

Deference to the agency is not necessary because the Department's recognition in § 106.10 that discrimination on the basis of gender identity is necessarily sex discrimination prohibited by Title IX is based on the unambiguous text of Title IX. *See* Defs.' PI Opp'n 5-10; *see also* 89 Fed. Reg. at 33,802 ("The text of Title IX unambiguously covers any sex discrimination, except to the extent excluded in certain statutory provisions . . . ."). The Department's conclusion is based on the best reading of Title IX's unambiguous text, and is therefore a valid exercise of the Department's authority under *Loper Bright*.

In *Bostock*, the Supreme Court held that discrimination on the basis of sexual orientation or gender identity was necessarily a form of discrimination "because of such individual's . . . sex" "because it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 655, 661 (2020). That conclusion was based on the Supreme Court's analysis of the plain text of the statute, not deference to any agency interpretation. *Cf. id.* at 674 ("[W]hen the meaning of the statute's terms is plain, our job is at an end."); *id.* at 683 ("Judges are not free to overlook plain statutory commands on the strength of nothing more than suppositions about intentions or guesswork about expectations."); *id.* at 688 (Alito, J., dissenting) ("According to the Court, the text is unambiguous."). As the Department recognized, the same reasoning applies to the text of Title IX's statutory prohibition on discrimination based on sex, which bars discrimination "on the basis of sex." 20 U.S.C. § 1681(a); *see also* 89 Fed. Reg. at 33,801-10

3

(explaining the justification for § 106.10 and the application of *Bostock*'s reasoning). Like the holding of Bostock, recognizing Title IX's coverage of gender identity discrimination does not require deferring to the Department's view.

### B. Section 106.31(a)(2)

The Department's explanation of § 106.31(a)(2) also did not rely on *Chevron* deference to the agency and reflected the natural reading of § 1681(a)'s prohibition on "discrimination." The de minimis harm standard in § 106.31(a)(2) recognizes that sex discrimination occurs only if different or separate treatment subjects a person to legally cognizable harm on the basis of sex. 89 Fed. Reg. at 33,814; *see also Bostock*, 590 U.S. at 681 (recognizing that discrimination occurs when there are "distinctions or differences in treatment [on the basis of sex] that injure protected individuals" (citation omitted)); *Muldrow v. City of St. Louis*, 601 U.S. ---, 144 S. Ct. 967, 974 (2024) ("The words 'discriminate against,' we have explained, refer to differences in treatment that injure employees." (cleaned up) (citations omitted)). And § 106.31(a)(2) also recognizes that, pursuant to Congressional direction, there are contexts in which sex separation or differentiation is allowed even if it causes more than de minimis harm. *See* 89 Fed. Reg. at 33,887 (to be codified at § 106.31(a)(2)) (listing specific statutory exceptions to Title IX's general rule that different or separate treatment on the basis of sex must not cause more than de minimis harm). Finally, the Department's recognition that "[a]dopting a policy or engaging in a practice that prevents a person from participating in an education program or activity consistent with the person's gender identity subjects a person to more than de minimis harm on the basis of sex," 89 Fed. Reg. 33,887 (to be codified at 34 C.F.R. § 106.31(a)(2)), is in keeping with the congressional instruction for the Department to effectuate the non-discrimination mandate, *id.* at 33,819.

### C. The Definition of Hostile Environment Harassment in § 106.2

The same analysis applies to the definition of hostile environment harassment as a form of

sex-based harassment in § 106.2, which is consistent with "relevant judicial precedent, . . . with congressional intent and the Department's longstanding interpretation of Title IX and resulting enforcement practice prior to the 2020 amendments." 89 Fed. Reg. at 33,490. By defining hostile environment harassment—including a requirement that, in order to constitute harassment, conduct must limit or deny a person's ability to participate in or benefit from the education program or activity—the Department effectuates the requirement of 20 U.S.C. § 1681(a) that "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance" (except when statutory exceptions apply), and takes the best reading of that statutory text. *Cf.* 20 U.S.C. § 1682.

The definition of hostile environment harassment in the Rule differs in only a few ways from the definition in the 2020 Amendments that Plaintiffs prefer. Specifically, under the Final Rule, conduct that is either "severe or pervasive" and that "limits or denies" access to the education program or activity can constitute hostile environment sex-based harassment when the conduct is both subjectively and objectively offensive. *Compare* 89 Fed. Reg. at 33,884 (to be codified at 34 C.F.R. § 106.2), *with* 85 Fed. Reg. at 30,574 (previously defining harassment to include "[u]nwelcome conduct determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the recipient's education program or activity"). And including conduct that is severe or pervasive is better aligned with the meaning of discrimination as the term is used in Title IX, as determined by reference to judicial interpretations of "discrimination" in other statutes, such as Title VII. 89 Fed. Reg. at 33,508-09; *see also Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64-67 (1986) (concluding, without applying *Chevron* deference, that discrimination under Title VII includes hostile environment

5

harassment based on a similar severe or pervasive standard). And including conduct that "limits" access is necessary to give full effect to the statutory language in Title IX, because Title IX prohibits a person from being "excluded from participation in" *or* "denied the benefits of" an education program or activity on the basis of sex. 20 U.S.C. § 1681(a); *see* Defs.' PI Opp'n 20-21; *see also* 89 Fed. Reg. at 33,511 ("[i]f Title IX only covered exclusion from participation or denial of access, there would have been no reason for Congress to add 'be denied the benefits of,'" because "be excluded from" would have supplied the necessary standard").

\* \* \*

Furthermore, the Supreme Court's reiteration in *Loper Bright* that "every statute's meaning is fixed at the time of enactment," *Loper Bright*, 2024 WL 3208360, at \*16, also does not support Plaintiffs' position. The Supreme Court's reasoning in *Bostock*—which the Department relied on in adopting § 106.10 of the Rule—was based on an understanding of Title VII's text at the time of enactment, not at some other time. *See Bostock*, 590 U.S. at 655 (assessing the meaning of key terms at the enactment of Title VII in 1964). But while the Supreme Court considered the meaning of *the text* at the time of enactment—consistent with *Loper Bright*—the Supreme Court nonetheless reached conclusions about *the application* of that text that the Supreme Court acknowledged would have been surprising when Title VII was enacted. *Id.* at 675–76 ("[T]he employers and dissents merely suggest that, because few in 1964 expected today's result, we should not dare to admit that it follows ineluctably from the statutory text. . . . That is exactly the sort of reasoning this Court has long rejected. . . . [t]he employer's logic impermissibly seeks to displace the plain meaning of the law in favor of something lying beyond it."). In fact, the Supreme Court embraced in *Bostock* that "many, maybe most, applications of Title VII's sex provision were 'unanticipated' at the time of the law's adoption" and that "many now-obvious applications met

6

with heated opposition early on, even among those tasked with enforcing the law." *Id.* at 679. Here, likewise, with the benefit of *Bostock*'s teachings, it is clear from the text of Title IX that discrimination on the basis of gender identity is necessarily discrimination on the basis of sex—based on the meaning of that term at the time of enactment—regardless of whether that application was expected when Title IX was enacted. *See Bostock*, 590 U.S. at 661 (to discriminate based on transgender status "requires an employer to intentionally treat individual employees differently because of their sex").

And finally, *Loper Bright* in no way alters the deferential standard used to evaluate challenges arguing that agency action is arbitrary and capricious, such as those raised by Plaintiffs here. Pls.' PI Mot. 31-38, ECF No. 12. As Defendants noted, such challenges face a high threshold for success because arbitrary and capricious review is deferential to the agency. *E.g.*, Defs.' PI Opp'n 14 ("Review under the arbitrary and capricious standard is 'deferential.'" (citing *Dep't of Com. v. New York*, 588 U.S. 752, 773 (2019))).

*Loper Bright* does not change this standard for arbitrary and capricious review, which is drawn from 5 U.S.C. § 706(2)(A). In fact, the Supreme Court in *Loper Bright* noted with approval the deferential standard for arbitrary and capricious review. *See Loper Bright*, 2024 WL 3208360, at *12 (contrasting the Court's reading of the statement in § 706 that courts, not agencies, should decide "all relevant questions of law" with the fact that "[s]ection 706 *does* mandate that judicial review of agency policymaking and factfinding be deferential" (citing the arbitrary and capricious standard of § 706(2)(A) (emphasis added)).

## II. *Kansas v. Department of Education*

As the Court notes, a district court in *Kansas* considering a challenge to the Rule recently issued a preliminary injunction. Prelim. Inj., *Kansas v. Dep't of Educ.*, 24-cv-4041 (D. Kan. July 2, 2024), ECF No. 54; see also Mem. & Order, *Kansas v. Dep't of Educ.*, 24-cv-4041 (D. Kan.

7

July 2, 2024), ECF No. 53. That decision is, of course, not binding on this Court. Defendants disagree with the conclusions of that court for the reasons stated in their briefing and oral argument in that case, as well as for the reasons stated in their briefing here. Defendants have filed notices of appeal and sought partial stays of similar rulings, *see* Defs.' Mot. for Partial Stay Pending Appeal, *Tennessee v. Cardona*, 24-cv-72 (E.D. Ky. June 24, 2024), ECF No. 104; Defs.' Mot. for Partial Stay Pending Appeal, *Louisiana v. Dep't of Education*, 24-cv-563, 24-cv-567 (W.D. La. June 24, 2024), ECF No. 59, and the Solicitor General will determine whether to seek such relief with respect to the *Kansas* ruling.

The *Kansas* decision does not obviate the need for the Court to resolve Plaintiffs' challenge in this case. The preliminary injunction issued by the *Kansas* district court—like the preliminary injunctions issued in other cases—was limited to the plaintiffs in that case. Specifically, the Department is enjoined from enforcing the Rule against "Kansas, Alaska, Utah, Wyoming, K.R.'s school, the schools attended by [the members of two-plaintiff organizations or children of members of one plaintiff-organization]." Prelim. Inj., *Kansas v. Dep't of Education*. Plaintiffs in the *Kansas* case have been ordered to file a notice identifying the relevant schools by July 15, 2024, but currently the identity of those specific schools is unknown to Defendants. Prelim. Inj., *Kansas v. Dep't of Education*. However, given that plaintiffs in this case are Arkansas, Missouri, Iowa, Nebraska, North Dakota, and South Dakota, presumably there are many schools operated by the Plaintiff-states that will not be affected by the order in the *Kansas* case.

In response to the Court's question, Defendants currently plan for the Final Rule to take effect on its August 1, 2024 effective date to the full extent permitted by court orders, including enforcement by the Department in the ordinary course.

Dated: July 8, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

EMILY B. NESTLER
Assistant Branch Director

*/s/ Elizabeth Tulis*
ELIZABETH TULIS
REBECCA KOPPLIN
BENJAMIN TAKEMOTO
HANNAH SOLOMON-STRAUSS
PARDIS GHEIBI
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone: (202) 514-9237
Fax: (202) 616-8470
E-mail: elizabeth.tulis@usdoj.gov

*Counsel for Defendants*