# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| STATE OF ARKANSAS, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>MIGUEL CARDONA, *in his official capacity as Secretary of Education*, et al.,<br><br>*Defendants*. | No. 4:24-cv-636-RWS |

**DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO
PLAINTIFFS' MOTION FOR A § 705 STAY AND PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.    Only a Single, Severable Provision of the Rule—§ 106.31(a)(2)—Addresses Sex Separation, Including With Respect to Restrooms and Locker Rooms. ............................. 2

        A.    The Only Provision of the Rule That Addresses Sex-Separate Restroom and Locker Room Policies Is § 106.31(a)(2). .......................................................... 2

        B.    The "Scope" Provision at § 106.10 Does Not Address Sex Separation Permitted by Statute or Regulation. ......................................................................... 4

    II.    Plaintiff A.F. Fails To Demonstrate Standing, and No Plaintiff Has Shown Imminent, Irreparable Harm Supporting the Preliminary Relief Sought. ........................................... 6

        A.    A.F. Lacks Standing To Challenge Any Provision of the Final Rule. .................... 7

        B.    Even if the States Have Standing, They Have Not Established Imminent, Irreparable Harm Supporting Issuance of the Preliminary Relief Sought. ........... 11

CONCLUSION ............................................................................................................................. 13

## TABLE OF AUTHORITIES

Cases

*Advantage Media, L.L.C. v. City of Eden Prairie*,
   456 F.3d 793 (8th Cir. 2006) .................................................................................................. 6

*Am. Fuel & Petrochemical Mfrs. v. EPA*,
   3 F.4th 373 (D.C. Cir. 2021) .................................................................................................... 5

*Babbitt v. United Farm Workers Nat'l Union*,
   442 U.S. 289 (1979) ................................................................................................................. 9

*Bostock v. Clayton County*,
   590 U.S. 644 (2020) ............................................................................................................ 4, 5

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ................................................................................................................. 11

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) .................................................................................................... 8, 11, 12

*Dakotans for Health v. Noem*,
   52 F.4th 381 (8th Cir. 2022) .............................................................................................. 7, 13

*FDA v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024) ................................................................................................................. 6

*Iowa Utils. Bd. v. F.C.C.*,
   109 F.3d 418 (8th Cir. 1996) .................................................................................................. 6

*Kansas v. U.S. Dep't of Educ.*,
   --- F. Supp. 3d ---, 2024 WL 3273285 (D. Kan. July 2, 2024) ................................................ 8

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ................................................................................................................. 6

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997) ................................................................................................................. 6

*Missourians for Fiscal Accountability v. Klahr*,
   830 F.3d 789 (8th Cir. 2016) .................................................................................................. 9

*Murthy v. Missouri*,
   --- S.Ct. ----, 2024 WL 3165801 (June 26, 2024) ................................................................ 11

*Sch. of the Ozarks, Inc. v. Biden*,
   41 F.4th 992 (8th Cir. 2022) .................................................................................................. 8

*Sleep No. Corp. v. Young*,
  33 F.4th 1012 (8th Cir. 2022) ................................................................................................ 6

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ................................................................................................................ 9

*Tennessee v. Cardona*,
  --- F. Supp. 3d ---, 2024 WL 3019146 (E.D. Ky. June 17, 2024) ............................................. 8

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ...................................................................................................... 7, 9, 10, 12

*Wright v. Missouri Dep't of Mental Health*,
  No. 4:18-cv-01981-RWS, 2020 WL 376350 (E.D. Mo. Jan. 23, 2020) ................................... 6

Federal Statutes

5 U.S.C. § 705 .......................................................................................................... 7, 11, 12, 13

State Statutes

Mo. Ann Stat. § 163.048(3) ........................................................................................................ 12

S.D. Codified Laws § 13-67-1 ................................................................................................... 12

Legislative Materials

H.R. Rep. No. 79-1980 (1946) ..................................................................................................... 7

Regulations

34 C.F.R. Part 106 ...................................................................................................................... 12

34 C.F.R. § 106.6(d) .................................................................................................................. 10

34 C.F.R. § 106.33 ................................................................................................................... 3, 5

34 C.F.R. § 106.62 ....................................................................................................................... 3

34 C.F.R. § 106.72 ....................................................................................................................... 3

34 C.F.R. § 106.82 ....................................................................................................................... 3

Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal
  Financial Assistance, 89 Fed. Reg. 33,474 (Apr. 29, 2024) ............................................. *passim*

# INTRODUCTION

Pursuant to the Court's Memorandum and Order dated June 21, 2024 (ECF No. 19), Defendants respectfully submit this supplemental brief to address the issues of (i) the Final Rule's application to restrooms and locker rooms, and (ii) standing.

First, with respect to the Court's question about restrooms and locker rooms, the Final Rule makes various amendments and additions to the Department's regulations implementing Title IX. Only one provision of the Rule addresses recipients' policies regarding sex-separate restrooms and locker rooms. Specifically, § 106.31(a)(2) provides in relevant part that—with certain exceptions that do not include a recipient's restrooms and locker rooms—recipients may not carry out otherwise permissible sex separation in a manner that causes more than de minimis harm. The provision further specifies that "[a]doping a policy or engaging in a practice that prevents a person from participating in an education program or activity consistent with the person's gender identity subjects a person to more than de minimis harm on the basis of sex." Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 89 Fed. Reg. 33,474, 33,887 (Apr. 29, 2024). Under § 106.31(a)(2), a recipient thus may not adopt a policy or engage in a practice that prevents a person from using sex-separate restrooms and locker rooms consistent with the person's gender identity.

Second, with respect to the issue of standing, Defendants note that the motion before the Court seeks preliminary relief, and to prevail on their motion, Plaintiffs must demonstrate that they face a substantial risk of imminent, irreparable harm in the absence of the preliminary relief sought. Demonstrating Article III standing is necessary, but not sufficient, to establishing such irreparable harm. Nonetheless, Plaintiff A.F., an Arkansas public high school student, fails even to demonstrate standing because her purported injuries consist of concerns about eligibility criteria for sex-separate sports teams—an issue that the Final Rule does not affect or address—and

1

speculation about situations that she hypothesizes might occur after the Rule's effective date. And even if the States have standing based on their status as parties regulated by the challenged provisions of the Rule, they fail to show that they are suffering irreparable harm justifying the broad preliminary relief sought based on the Rule's purported interference with certain state laws, which is the only theory of injury they invoke in support of their motion.

## ARGUMENT

### I. Only a Single, Severable Provision of the Rule—§ 106.31(a)(2)—Addresses Sex Separation, Including With Respect to Restrooms and Locker Rooms.

The Final Rule at issue in this case consists of numerous separate, severable regulatory provisions. As explained in Defendants' opposition brief, only one of the provisions of the Rule challenged by Plaintiffs, § 106.31(a)(2), addresses sex separation, such as sex-separate restrooms and locker rooms. *See* Defs.' Opp'n to Pls.' Mot. for § 705 Stay & Prelim. Inj. 8, 13, ECF No. 18 ("Defs.' Opp."). The other challenged provisions—including § 106.10, which describes the scope of Title IX's general prohibition on discrimination "on the basis of sex"—do not. Any relief with respect to Plaintiffs' restroom- and locker room-specific complaints would at most run against § 106.31(a)(2), not any other provision of the Rule or the Rule as a whole.

#### A. The Only Provision of the Rule That Addresses Sex-Separate Restroom and Locker Room Policies Is § 106.31(a)(2).

The Final Rule makes a variety of changes to Title IX's current regulations. *See generally* 89 Fed. Reg. at 33,882–96 (regulatory changes). Among other things, the Rule streamlines administrative requirements related to the appointment and responsibilities of Title IX coordinators, *id.* at 33,885 (to be codified at 34 C.F.R. § 106.8(a)–(b)); revises recipients' notice of nondiscrimination and record-keeping requirements, *id.* at 33,885–86 (to be codified at 34 C.F.R. § 106.8(c), (f)); ensures access to lactation spaces for students who are breastfeeding, *id.* at

2

33,887 (to be codified at 34 C.F.R. § 106.40(b)(3)(v)); and provides recipients additional flexibility in the development and implementation of procedures to respond to claims of sex discrimination, including sex-based harassment, *id.* at 33,888–95 (to be codified at 34 C.F.R. §§ 106.45, 106.46). The various provisions of the Final Rule are "intended to operate independently of each other" and are severable. *Id.* at 33,848; *see id.* (discussing the Rule's severability provisions to be codified at 34 C.F.R. §§ 106.16 and 106.48, and existing provisions at 34 C.F.R. §§ 106.62, 106.72, and 106.82).

One provision of the Rule, § 106.31(a)(2), addresses Title IX's limitations on otherwise permissible separate or different treatment based on sex, including recipients' provision of sex-separate restrooms and locker rooms under 34 C.F.R. § 106.33. As set forth in § 106.31(a)(2):

> In the limited circumstances in which Title IX or this part permits different treatment or separation on the basis of sex, a recipient must not carry out such different treatment or separation in a manner that discriminates on the basis of sex by subjecting a person to more than de minimis harm, except as permitted by 20 U.S.C. 1681(a)(1) through (9) and the corresponding regulations §§ 106.12 through 106.15, 20 U.S.C. 1686 and its corresponding regulation § 106.32(b)(1), or § 106.41(b). Adopting a policy or engaging in a practice that prevents a person from participating in an education program or activity consistent with the person's gender identity subjects a person to more than de minimis harm on the basis of sex.

89 Fed. Reg. at 33,887 (to be codified at 34 C.F.R. § 106.31(a)(2)).

The Department's preexisting regulation at 34 C.F.R. § 106.33 provides that "[a] recipient may provide separate toilet, locker room, and shower facilities on the basis of sex." Because § 106.33 is not one of the excepted regulatory contexts listed in § 106.31(a)(2), it is subject to the de minimis harm standard set forth in that provision, including the specification that a recipient may not prevent a person from participating in an education program or activity consistent with their gender identity because doing so causes more than de minimis harm on the basis of sex. *See* 89 Fed. Reg. at 33,887 (to be codified at 34 C.F.R. § 106.31(a)(2)). Therefore, if a recipient offers

3

sex-separate locker room or restroom facilities under § 106.33, it may not prevent students and employees from using those facilities consistent with their gender identity. *See id.* at 33,818. Section 106.31(a)(2) is the only provision of the Final Rule that addresses recipients' obligations with respect to transgender students' access to sex-separate restrooms, locker rooms, and shower facilities permitted under Title IX.

### B. The "Scope" Provision at § 106.10 Does Not Address Sex Separation Permitted by Statute or Regulation.

Plaintiffs' arguments regarding restrooms and locker rooms conflate § 106.31(a)(2) with § 106.10, a separate provision of the Final Rule. Section 106.10 simply describes the scope of sex discrimination prohibited by Title IX. *See* 89 Fed. Reg. at 33,886 ("Discrimination on the basis of sex includes discrimination on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity." (to be codified at 34 C.F.R. § 106.10)). As explained in Defendants' opposition to Plaintiffs' motion, the Department's interpretation of Title IX's general prohibition on discrimination "on the basis of sex," set forth in § 106.10, straightforwardly applies the Supreme Court's reasoning in *Bostock v. Clayton County*, 590 U.S. 644 (2020). Defs.' Opp. 6–7. Per *Bostock*, it is impossible to discriminate against someone for being transgender without discriminating against that person on the basis of sex. *See id.* 6 (citing *Bostock*, 590 U.S. at 660–61). Thus, as set forth in § 106.10 of the Rule, Title IX's prohibition on discrimination "on the basis of sex" encompasses, *inter alia*, discrimination on the basis of gender identity. 89 Fed. Reg. at 33,886. Section 106.10 therefore makes clear that prohibited sex discrimination for purposes of Title IX includes actions like putting a student in detention or excluding a student from homecoming for being transgender.

Section 106.10 does not address sex separation that has been permitted by statute or regulation. *See, e.g.*, *id.* at 33,809 (declining "the suggestion to revise § 106.10 to address

4

separation of students based on sex"). Such sex separation is instead addressed in § 106.31(a)(2), as discussed above. Relevant here, § 106.10 does not modify, rescind, or otherwise address a recipient's discretion to "provide separate toilet, locker room, and shower facilities on the basis of sex" under 34 C.F.R. § 106.33.

In their memorandum in support of their motion, Plaintiffs repeatedly characterized the "Rule" as affecting the policies recipients may adopt with respect to sex-separate restrooms, locker rooms, and shower facilities. *See, e.g.*, Br. in Supp. of Mot. for a 5 U.S.C. 705 Stay & Prelim. Inj. 1, 16, 17, 24, ECF No. 12 ("Pls.' Br."). And Plaintiffs have suggested that in § 106.10 of the Rule, the Department was wrong to apply *Bostock*'s reasoning because *Bostock* did not decide "whether enforcing 'sex-segregated bathrooms, locker rooms, and dress codes' would constitute discrimination under Title VII." *Id.* 8–9 (quoting *Bostock*, 590 U.S. at 681); *see id.* 24. This argument misses the mark because, just as *Bostock* merely interpreted Title VII's prohibition on discrimination "because of" sex, § 106.10 only says what it means for Title IX to prohibit discrimination "on the basis of sex," *see* 89 Fed. Reg. at 33,802–03; it does "not purport to address bathrooms, locker rooms, or anything else of the kind." *Bostock*, 590 U.S. at 681.

As set forth in Defendants' prior briefing, the Department's separate determination, in § 106.31(a)(2), that recipients may not prevent students from using sex-separate restrooms and locker rooms consistent with their gender identity because such a policy would subject students to more than de minimis harm on the basis of sex was proper and lawful. *See* Defs.' Opp. 11–13, 14–15. But even if the Court were to disagree, any relief with respect to that part of the Rule would run at most against § 106.31(a)(2), not against § 106.10 or the Rule as a whole. *See* 89 Fed. Reg. at 33,848 (explaining that the Rule's provisions are "intended to operate independently of each other"); *Am. Fuel & Petrochemical Mfrs. v. EPA*, 3 F.4th 373, 384 (D.C. Cir. 2021) (vacating one

5

section of regulation after determining section was severable, where the "agency would have adopted the severed portion on its own" to "operate[] independently" (citation omitted)).

## II. Plaintiff A.F. Fails To Demonstrate Standing, and No Plaintiff Has Shown Imminent, Irreparable Harm Supporting the Preliminary Relief Sought.

To establish standing, a plaintiff must show that it has suffered or will imminently suffer an "injury in fact" "caused" by the challenged government action that a favorable decision would likely "redress." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–62 (1992). For the injury-in-fact requirement, a plaintiff must allege an invasion of a "legally protected interest" that is "concrete" and "particularized" and "actual or imminent"—not "conjectural" or "hypothetical." *Id.* at 560 (citation omitted). "The causation requirement precludes speculative links—that is, where it is not sufficiently predictable how third parties would react to government action or cause downstream injury to plaintiffs." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024).

Moreover, where regulatory provisions are severable, a plaintiff must establish standing with respect to each provision it challenges. *See Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 801 (8th Cir. 2006) ("Because the code's provisions are properly considered severable, [the plaintiff] must show injury, causation, and redressability with respect to each provision it challenges as overbroad.").

On a motion for preliminary injunction, a plaintiff must not merely show that it has standing, but also must prove that it is likely to suffer imminent, irreparable harm in the absence of preliminary relief. *See, e.g.*, *Wright v. Missouri Dep't of Mental Health*, No. 4:18-cv-01981-RWS, 2020 WL 376350, at *2 (E.D. Mo. Jan. 23, 2020) ("Irreparable harm must be certain and imminent such that there is a clear and present need for equitable relief." (citing *Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996)). A plaintiff must demonstrate such irreparable harm by "substantial proof," a "much higher" burden than required to establish standing even at the

6

summary judgment stage. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam); *see Sleep No. Corp. v. Young*, 33 F.4th 1012, 1018 (8th Cir. 2022) (movant "must prove that 'irreparable injury is likely in the absence of an injunction'" (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008))). Importantly, a "preliminary injunction must be narrowly tailored . . . to remedy only the specific harms shown by the plaintiffs, rather than to enjoin all possible breaches of the law." *Dakotans for Health v. Noem*, 52 F.4th 381, 392 (8th Cir. 2022) (quotation marks and citations omitted).

To the extent Plaintiffs seek a stay under 5 U.S.C. § 705, that provision that likewise contemplates preliminary relief subject to traditional equitable principles; it expressly provides that courts may delay an action's effective date only "to the extent necessary to prevent irreparable injury." 5 U.S.C. § 705; *see* H.R. Rep. No. 79-1980, at 43 (1946) (explaining this relief "is equitable").

### A. A.F. Lacks Standing To Challenge Any Provision of the Final Rule.

The individual Plaintiff, Arkansas high school student A.F., cannot establish standing because she has not established a cognizable injury fairly traceable to any part of the Final Rule. The harms that A.F. alleges she will suffer if the Final Rule goes into effect are all speculative, and in one case, completely divorced from the actual provisions of the Rule: A.F. fears she will be forced to play on sports teams "alongside" students whose sex-assigned-at-birth is male, Compl. ¶¶ 114–118; she worries she will have to share "bathrooms, locker rooms, and showers" with students who were assigned male at birth, *id.* ¶ 113; and she fears that she will be punished for expressing "her views about gender identity at school with her classmates and coaches," *id.* ¶ 110. None of these alleged fears establishes an injury-in-fact for purposes of Article III standing.

First, A.F. cannot establish standing based on her desire not to play on sports teams

7

alongside students who were assigned male at birth because the Final Rule does not affect the eligibility criteria for sex-separate sports teams permitted under Title IX. *See* Defs.' Opp. 16; 89 Fed. Reg. at 33,816–17; *see also Kansas v. U.S. Dep't of Educ.*, --- F. Supp. 3d ---, 2024 WL 3273285, at *11 (D. Kan. July 2, 2024) (acknowledging that the Final Rule does not amend the Department's regulation regarding sex-separate athletic teams), *appeal filed*, No. 24-3097 (10th Cir. July 11, 2024); *Tennessee v. Cardona*, --- F. Supp. 3d ---, 2024 WL 3019146, at *37 (E.D. Ky. June 17, 2024) (same), *appeal filed*, No. 24-5588 (6th Cir. June 26, 2024). Accordingly, regardless of whether A.F.'s school or any other school might allow transgender students to participate on sports teams consistent with their gender identity, any alleged injury associated with such a policy would neither be traceable to the Rule nor likely to be redressed by a favorable decision in this case. *Cf. Sch. of the Ozarks, Inc. v. Biden*, 41 F.4th 992, 998 (8th Cir. 2022) (rejecting a "theory of injury" that was "based on a misunderstanding" of the challenged agency action), *cert. denied*, 143 S. Ct. 2638 (2023).

Second, A.F. cannot establish standing based on her desire not to be in a school bathroom or locker room with a transgender female student because she has not even alleged that there are any such students at her school, let alone that she is likely to find herself sharing a bathroom or locker room with such a student. *See* Compl. ¶¶ 8, 9, 10, 113; A.F. Decl. ¶¶ 48–50, ECF No. 9-3. A.F.'s unadorned fear that transgender students "may be present while [she is] changing clothes or showering," Pls.' Br. 45, is not a concrete and particularized, actual or imminent injury. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 417 (2013) (plaintiffs cannot establish standing by burdening themselves based on fears of hypothetical future harm). A.F.'s related concern about rooming with a transgender student on a school overnight trip, Compl. ¶¶ 11, 113; A.F. Decl. ¶ 52, is similarly speculative, and unsupported. Indeed, A.F. does not even allege that there is any

8

transgender student with whom she conceivably might be assigned to share a room on such a trip.

Third, A.F.'s assertion that she will refrain from voicing her views about gender identity based on a fear she will be punished, Pls.' Br. 42; Compl. ¶ 110; A.F. Decl. ¶¶ 45–46, likewise is not sufficient to establish an injury in fact, because her purported fear is not based on a reasonable understanding of the Rule. "In analyzing a claim of standing through self-censorship, the relevant inquiry is whether a party's decision to chill his speech in light of the challenged [regulation] was objectively reasonable." *Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 794–95 (8th Cir. 2016) (cleaned up). Here, the Final Rule does not impose penalties or sanctions on students for engaging in particular speech, let alone for "express[ing] . . . views about gender identity," Pls.' Br. 42. *Cf. Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159–60 (2014) (plaintiff may bring a pre-enforcement First Amendment challenge only where it intends "to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder" (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979))). Rather, the Rule imposes obligations on recipients of federal funding, including specifying that a recipient "has an obligation to address a sex-based hostile environment under its education program or activity," 89 Fed. Reg. at 33,886 (to be codified at 34 C.F.R. § 106.11), and that "[a] recipient with knowledge of conduct that reasonably may constitute sex discrimination in its education program or activity must respond promptly and effectively," *id.* at 33,888 (to be codified at 34 C.F.R. § 106.44(a)). The Rule defines "hostile environment harassment" as "[u]nwelcome sex-based conduct that, based on the totality of the circumstances, is subjectively and objectively offensive, and is so severe or pervasive that it limits or denies a person's ability to participate in or benefit from the recipient's education program or activity." *Id.* at 33,884 (to be codified at 34 C.F.R. § 106.2).

9

A.F. takes issue not with a recipient's general obligation to address harassment under its programs or activities, but rather with the Rule's definition of "hostile environment harassment," based on her speculation about how her school might apply that definition. *See* Pls.' Br. 43; Compl. ¶ 110. But A.F. does not aver that there even are individuals at her school who have been offended by her past (and desired future) speech, *see* A.F. Decl. ¶¶ 39–46—which is only one of the many elements that would have to be satisfied for A.F.'s sex-based speech to be deemed hostile environment harassment. *See* 89 Fed. Reg. at 33,884 (to be codified at 34 C.F.R. § 106.2). Nor does she plausibly allege or present evidence that her school would fail to adhere to the Rule's insistence that a "recipient must formulate, interpret, and apply its rules in a manner that respects the legal rights of students and employees when taking action to end sex-based harassment that creates a hostile environment." *Id.* at 33,503. Recipients have long operated under this obligation, despite individuals' differing views on sometimes-controversial matters involving sex.

As the Rule emphasizes, the Department's Title IX regulations provide that "[n]othing in this part requires a recipient to . . . [r]estrict any rights that would otherwise be protected from government action by the First Amendment," 34 C.F.R. § 106.6(d). *See* 89 Fed. Reg. at 33,823, 33,492; *see id.* at 33,507 ("As § 106.6(d) makes clear, and as the Department reaffirms, recipients cannot use Title IX to limit the free exercise of religion or protected speech or expression, or otherwise restrict any other rights guaranteed against government action by the U.S. Constitution."). Further, the Rule expressly states that "the First Amendment may in certain circumstances constrain the manner in which a recipient responds to discriminatory harassment," and recipients are not compelled to respond to harassment with discipline. 89 Fed. Reg. at 33,495.

At best, A.F.'s alleged intent to self-censor is based on a speculative fear that—contrary to the Rule's express admonitions—recipients will invoke the Rule as a basis to target protected

10

speech. Pls.' Br. 42–43; A.F. Decl. ¶¶ 45–46. But standing cannot be based on fears about independent, unlawful actions by third parties. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 106 (1983); *see also Murthy v. Missouri*, --- S.Ct. ----, 2024 WL 3165801, at *8 (June 26, 2024) ("It is a bedrock principle that a federal court cannot redress 'injury that results from the independent action of some third party not before the court.'" (citation omitted)); *Clapper*, 568 U.S. at 413 ("[W]e have been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment."). A.F.'s speculation that her school will wrongly punish her in violation of applicable speech and religious liberty protections does not suffice to establish Article III standing to challenge any portion of the Rule.[1]

### B. Even if the States Have Standing, They Have Not Established Imminent, Irreparable Harm Supporting Issuance of the Preliminary Relief Sought.

Even if the States have standing on the ground that they, unlike A.F., are regulated by the Rule's challenged provisions, they fail to demonstrate irreparable harm from these provisions justifying the broad preliminary relief they seek. The Complaint alleges that the Rule harms the States because of (1) unspecified compliance costs, (2) the Rule's purported interference with "sovereign interests," and (3) alleged risks that State recipients will be stripped of federal funding and be subject to private lawsuits due to the Rule. Compl. ¶¶ 75–108. But in their motion for a § 705 stay and preliminary injunction, the States have cited no evidence supporting these allegations, and the States do not even attempt to argue that alleged compliance costs or risks of private lawsuits and loss of federal funding are imminent, irreparable harms justifying preliminary relief. *See generally* Pls.' Br. 38–42.

Instead, the States' sole theory of irreparable harm is that the Rule interferes with the

---

[1] Though A.F. lacks standing, the Court may not need to decide this issue, as A.F. does not appear to seek broader relief than Arkansas, where she attends public school. *See* Part II.B *infra*.

11

States' sovereign interests in enforcing state laws related to separating or differentiating among students or school employees based on sex, particularly in the context of athletics. *See id.* This theory of injury rests partly on a misunderstanding of the Rule, which has no impact on state laws concerning eligibility for male and female athletic teams. *See* Part II.A *supra*. Indeed, because the only purportedly conflicting Missouri and South Dakota laws address sex-separate athletic teams, *see* Pls.' Br. 38 (citing Mo. Rev. Stat. § 163.048(3) and S.D. Codified Laws § 13-67-1), neither of those States identifies any injury whatsoever to its sovereign interests, and this failure to show irreparable harm dooms Missouri's and South Dakota's requests for preliminary relief.

The other laws cited by the States in support of their "sovereign interests" theory concern (1) access to sex-separate bathrooms, locker rooms, and sleeping quarters on school overnight trips, and (2) use of sex-specific pronouns and titles by students and school employees. *Id.* 39–41. Any conflict between those laws and the Final Rule would be limited to (1) § 106.31(a)(2), the provision that addresses "the limited circumstances in which Title IX or [34 C.F.R. Part 106] permits different treatment or separation on the basis of sex," 89 Fed. Reg. at 33,887, and, potentially, (2) the "hostile environment harassment" definition in § 106.2, *id.* at 33,884, as applied to gender identity discrimination (though it is not clear that enforcement of the cited State pronoun-use laws would actually conflict with the Rule). Thus, even if the Court were to reject Defendants' argument that the Rule does not invade state sovereignty merely by preempting conflicting state laws, Defs.' Opp. 29, and even if the Court were to find that State Plaintiffs satisfied the other elements necessary for preliminary relief, the States would not be entitled to a stay of the "Final Rule" or an injunction prohibiting Defendants "from implementing or enforcing that rule." Mot. for 5 U.S.C. 705 Stay & Prelim. Inj. 1, ECF No. 9. Rather, because the States' alleged harms are based only on § 106.31(a)(2) and on potential applications of the "hostile environment

harassment" definition to speech about gender identity, enjoining those provisions and applications is all that would be necessary to provide the States full relief. *See* 89 Fed. Reg. at 33,848 (explaining that the Rule's provisions are severable); *Dakotans for Health*, 52 F.4th at 392 (a "preliminary injunction must be narrowly tailored . . . to remedy only the specific harms shown by the plaintiffs" (citation omitted)).

## CONCLUSION

For the foregoing reasons, and those set forth in Defendants' prior opposition brief, the Court should deny Plaintiffs' motion for a § 705 stay and preliminary injunction.

Dated: July 12, 2024　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　BRIAN M. BOYNTON
　　　　　　　　　　　　　　　　　　　Principal Deputy Assistant Attorney General

　　　　　　　　　　　　　　　　　　　EMILY B. NESTLER
　　　　　　　　　　　　　　　　　　　Assistant Branch Director

　　　　　　　　　　　　　　　　　　　*/s/ Elizabeth Tulis*
　　　　　　　　　　　　　　　　　　　ELIZABETH TULIS
　　　　　　　　　　　　　　　　　　　REBECCA KOPPLIN
　　　　　　　　　　　　　　　　　　　BENJAMIN TAKEMOTO
　　　　　　　　　　　　　　　　　　　HANNAH SOLOMON-STRAUSS
　　　　　　　　　　　　　　　　　　　PARDIS GHEIBI
　　　　　　　　　　　　　　　　　　　Trial Attorneys
　　　　　　　　　　　　　　　　　　　United States Department of Justice
　　　　　　　　　　　　　　　　　　　Civil Division, Federal Programs Branch
　　　　　　　　　　　　　　　　　　　1100 L Street, NW
　　　　　　　　　　　　　　　　　　　Washington, DC 20005
　　　　　　　　　　　　　　　　　　　Phone: (202) 514-9237
　　　　　　　　　　　　　　　　　　　Fax: (202) 616-8470
　　　　　　　　　　　　　　　　　　　E-mail: elizabeth.tulis@usdoj.gov

　　　　　　　　　　　　　　　　　　　*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

    I hereby certify that on July 12, 2024, I electronically filed this document with the Court by using the CM/ECF system, and that this document was distributed via the Court's CM/ECF system.

*/s/ Elizabeth Tulis*